*609 ROBERT P. FRANK, Judge.
David Gordon Bragg (appellant) was convicted in a bench trial of five counts of embezzlement, in violation of Code §§ 18.2-111 and 18.2-95.[1] On appeal, he does not contest his general guilt, but contends the trial court erred in finding him guilty of five counts instead of one. He argues the single larceny doctrine required the trial court to find him guilty on only one count. Finding the single larceny doctrine does not apply to the facts of this case, we affirm the five convictions.

BACKGROUND

The facts are not in dispute.[2] Appellant was one of two volunteer treasurers for St. Andrews United Methodist Church in Virginia Beach. Appellant’s duties allowed him to write and sign checks on behalf of the church and reconcile the church’s bank accounts. Beginning on or about December 9, 1999, he began embezzling money from the church. Upon the end of his term as treasurer, the new treasurer discovered the discrepancies in the church’s accounts.
Approximately 142 checks, worth $82,130.40, had been “written outside the scope of [appellant’s] authority and to his benefit.” Appellant used church funds to pay a number of personal debts, including his mortgage, his cell phone bill, a car loan, and other personal expenses. On several occasions, he made the checks payable to himself and indicated “payroll” on the checks.
Appellant admitted to the police that he had embezzled money from the church to pay personal bills. During the pretrial hearing on appellant’s motion to merge the five counts *610 into one count of embezzlement, appellant testified, “I was broke. I had no money. I was getting ready to lose everything.” He took the church funds “[t]o continue living.” However, appellant admitted he wrote checks to a friend “for computer work that he did for me,” gave another individual a check for $750 on Christmas Eve of 1999, and took the same person with him on a trip to Israel, costing $3,572. All of these expenses were incurred after appellant began embezzling from the church, when he claimed he needed the funds to cover living expenses.
On cross-examination, the following exchange took place:
[PROSECUTOR]: But you didn’t start off in the beginning saying, I’m going to use church funds to write my mortgage payment every time it comes up, did you?
[APPELLANT]: Well, no. I wouldn’t say I did that.
[PROSECUTOR]: Because it was your intention not to write another check? Each time you would write one, your thought would be, This is the last time I’m doing this; isn’t that right?
[APPELLANT]: Yes, certainly, because I wanted to pay the money back obviously.
Appellant argued that the five indictments should be merged into one because “it was a continuous desire to take the money for on-going bills.... ” The Commonwealth argued the embezzlement was a series of individual impulses. In denying appellant’s motion for merger, the trial court found appellant was taking money “as the need arose.” The trial court found no “regular pattern” in the dates or groupings of the checks. The trial court concluded the funds were embezzled on “individual impulses” and were not based on a “preformulated plan”:
He embezzled these funds as the needs arose and his bills came due and that to some extent is corroborated or reflected in the dates and groupings of the checks and in the time intervals that exist between the various checks that are *611 set forth in the Defendant’s Exhibit 1. There is no — it’s not a regular pattern. It seems to be consistent with exactly what he said [in his testimony today].
* * * * * *
[¶] e was apparently incurring substantial personal debt for what would be — most people would consider discretionary items, such as trips and expenses for other individuals that were the objects of his bounty, so to speak, and that apparently, at least in one instance, he was putting on his MasterCard or Visa or charge card; and then when that bill came due, he embezzled the funds to pay that.

ANALYSIS

Appellant contends he should be convicted of only one count of embezzlement under the single larceny doctrine since he wrote the 142 checks under a “single impulse.” We disagree.[3]
In Richardson v. Commonwealth, 25 Va.App. 491, 497, 489 S.E.2d 697, 700 (1997) (en banc), we held, “[u]nless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then thefts from the same room are but a single larceny.” This Court explained the factors to *612 consider in Acey v. Commonwealth, 29 Va.App. 240, 247, 511 S.E.2d 429, 432 (1999):
A series of larcenous acts will be considered a single count of larceny if they “are done pursuant to a single impulse and in execution of a general fraudulent scheme.” West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919). We must consider the following factors when deciding whether the single larceny doctrine applies: (1) the location of the items taken, (2) the lapse of time between the takings, (3) the general and specific intent of the taker, (4) the number of owners of the items taken and (5) whether intervening events occurred between the takings. See Richardson v. Commonwealth, 25 Va.App. 491, 497, 489 S.E.2d 697, 700 (1997). “The primary factor to be considered is the intent of the thief....” See id.
As this analysis turns on the particular facts of a case, see Richardson, 25 Va.App. at 497-98, 489 S.E.2d at 700-01, we will affirm the trial court’s determination unless plainly wrong or unless the record lacks any evidence to • support that determination, see Byers v. Commonwealth, 37 Va.App. 174, 179, 554 S.E.2d 714, 716 (2001). Thus, our inquiry is whether the evidence supports the fact finder’s determination that the acts of embezzlement were individual impulses and not committed under a “ ‘single impulse and in execution of a general fraudulent scheme.’ ” Richardson, 25 Va.App. at 496, 489 S.E.2d at 700 (quoting West, 125 Va. at 754, 99 S.E. at 656).
Clearly, appellant had a general scheme or intent to steal. However, a series of thefts committed under a general scheme is not the controlling factor in determining whether the single larceny doctrine applies. As this Court stated in Richardson, “a series of thefts committed in rapid succession pursuant to a general scheme to steal from distinct locations, such as different shops, stores, or buildings, will constitute separate offenses.” 25 Va.App. at 497, 489 S.E.2d at 700. In such cases, “[t]he primary factor to be considered is the intent of the thief and the question to be asked is whether the thefts, although occurring successively within a brief time frame, *613 were part of one impulse.” Id.[4]
We must decide whether appellant acted under the same impulse or different impulses in each of the five time periods set forth in the indictments.[5] We review the facts of this case in light of the factors in Acey.[6] The church was the only victim, perhaps suggesting a single intent. However, the lapse of time between the offenses was significant — twenty-five months from the first act of embezzlement to the last. Such a length of time, under these circumstances, constitutes a factor indicating the acts were separate. Typical cases finding one transaction commonly involve more contemporaneous acts. See Acey, 29 Va.App. at 247, 511 S.E.2d at 432 (finding “no appreciable lapse of time” between larcenous acts); Millard v. Commonwealth, 34 Va.App. 202, 207, 539 S.E.2d 84, 86 (2000) (finding one transaction where three checks were presented to a bank teller); Richardson, 25 Va.App. at 497, 489 S.E.2d at 700 (considering thefts that occurred “within a brief time frame”).
Appellant’s testimony is especially relevant, as it indicates his intent throughout the various time periods. He testified he did not form a general plan to steal church funds every time a bill came due. This testimony supports the trial court’s finding that appellant acted on individual impulses, not to further a general scheme. Appellant testified that, when an individual debt was due, it created the “need” to embezzle again. He claimed that he cashed the checks to “continue living” because he could not pay his bills otherwise. Accord *614 ing to his own testimony, appellant did not intend to continue taking money from the church. Only when a debt arose that he could not pay from his own income would he cash a check from the church. After paying that debt, he had no intention to embezzle again. These debts were intervening acts that created individualized intentions to embezzle.
Further, the trial court properly concluded that appellant, by using funds for making gifts to third parties, evidenced a series of single impulses. Appellant’s bills for computer services, his extravagant gifts, and his international trip rebutted any general and continuing need for basic living expenses.
Appellant cites Challenor v. Commonwealth, 209 Va. 789, 167 S.E.2d 116 (1969), to support his argument that the checks were signed and cashed as the result of a single impulse. His reliance is misplaced. The issue in Challenor was whether an indictment charging the defendant with embezzling funds over a thirty-month period complied with Code § 19.1-168 (recodified at Code § 19.2-223), which permitted a single indictment for “ ‘any number of distinct acts of ... embezzlements ... which may have been committed ... within six months from the first to the last of the acts charged in the indictment.’ ” Id. at 792, 167 S.E.2d at 118. The Supreme Court found the indictment charged “ ‘a continuous plan or scheme and a single offense of embezzlement’ ” and, thus, did not violate the Code section. Id. (citing Webb v. Commonwealth, 204 Va. 24, 32, 129 S.E.2d 22, 28 (1963)). From this ruling, appellant argues that all embezzlement is a continuous plan or scheme. However, Challenor did not address the definition of embezzlement or the application of the single larceny doctrine. Instead, it addresses an issue based on the agreed presumption that a continuous plan or scheme occurred. As the parties here disagree on whether a continuous plan existed, we find Challenor inapplicable here.
Additionally, Code § 19.2-223, the recodification of Code § 19.1-168 as considered in Challenor, specifically refers to “any number of distinct acts.” Regarding this particular language, Mechling v. Slayton, 361 F.Supp. 770 (E.D.Va.1973), *615 is instructive. Mechling used 204 separate bank withdrawal slips to commit acts of embezzlement, which, pursuant to then Code § 19.1-168, were indicted as three counts covering three different six-month periods. Id. at 772. He contended, in a habeas corpus proceeding, that, because the indictments “carve[d] out three crimes in an allegedly arbitrary manner when in fact, only one continuing criminal transaction was in issue,” the separate counts violated due process. Id. The district court rejected that argument, opining, “[t]he thrust of [Code § 19.1-168], therefore, is to allow joinder under one charge of separate crimes committed within the specified period where said joinder, absent statutory authority, possibly might run afoul of the rule of duplicity of charges. The rule of duplicity prohibits the simultaneous charging of several unrelated crimes in one indictment.” Id. The court indicated the prosecution could have indicted the defendant on 204 separate counts, “seeking to prove each separately.” Id.
Clearly, Code § 19.2-223, which appellant argues supports his position, simply allows the Commonwealth to join distinct charges into one indictment, which can cover a six-month period. The statute does not create any presumption that embezzlement is a continuing crime.
Appellant also asks us to consider Millard, 34 Va.App. 202, 539 S.E.2d 84. However, this case does not support appellant’s position. Millard was charged with three separate counts of obtaining money by false pretenses for presenting three checks payable to Craig Funk, and further endorsed by “Jennifer Funk,” and then representing herself as “Jennifer Funk.” Id. at 204, 539 S.E.2d at 85. The checks were presented to the bank in one transaction, and Millard received “one lump sum.” Id. This Court reversed the three convictions under the single larceny doctrine. The Court found only one transaction had occurred; therefore, only a “single impulse” could be proved. Id. at 207, 539 S.E.2d at 86. Thus, Millard is distinguishable on its facts as appellant here does not argue the acts of embezzlement all occurred on the same day nor that he received the money in “one lump sum.”
*616 We conclude the evidence supports the trial court’s finding that appellant entertained a separate and distinct intent to commit the various acts of embezzlement. We affirm the judgment of the trial court.

Affirmed.

. Appellant entered a conditional plea of guilty, pursuant to Code § 19.2-254, with the Commonwealth’s consent, preserving this issue for appeal.

. Although appellant testified in support of his motion to consolidate the indictments, the trial court did not hear any additional evidence. Instead, given appellant’s guilty plea, the Commonwealth filed a "Stipulation of Commonwealth’s Evidence,” signed by appellant and his attorney, at the time of trial.

. We do not address nor do we decide whether embezzlement is an offense subject to a single larceny doctrine analysis. At the hearing on the motion to merge, both counsel made their arguments assuming that the doctrine would apply if the evidence proved the acts resulted from a "single impulse.” The trial court found the acts of embezzlement were numerous "individual impulses.” As the Commonwealth at trial essentially conceded the single larceny doctrine can apply to embezzlement cases and concedes on appeal that we "need not decide” whether this doctrine applies generally to resolve this case, we will not consider whether Virginia law should allow the doctrine to apply to charges of embezzlement. See Garcia v. Commonwealth, 40 Va.App. 184, 192 n. 2, 578 S.E.2d 97, 100 n. 2 (2003) (noting dicta includes holdings that were unnecessary to the appellate court’s decision and, therefore, are not binding on subsequent appellate decisions).

. Appellant conceded at oral argument that embezzlement could give rise to multiple counts, depending on the facts.

. The indictments set forth the following dates for the five offenses: December 8, 1999 through May 15, 2000; May 18, 2000 through October 11, 2000; October 17, 2000 through April 5, 2001; April 10, 2001 through September 6, 2001; September 11, 2001 through January 7, 2002.

. We note that some of the factors cannot be discussed here. For example, no tangible property was stolen, so the "location” of the stolen "items” cannot be addressed.